IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EL-BARSEEM K. ALLAH,

        Plaintiff,

   v.                               Civil Action 2:22-cv-21
                                     Judge Edmund A. Sargus, Jr.
                                     Magistrate Judge Kimberly A. Jolson
ANNETTE CHAMBERS-SMITH, et al.,

        Defendants.

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 39). For the reasons that follow, the Undersigned **RECOMMENDS** that the Motion be **GRANTED in part and DENIED in part**. Additionally, the Court **ORDERS** service on Defendant Mahlman by the United States Marshal.

**I.    BACKGROUND**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against several officials or employees of the Southern Ohio Correctional Facility ("SOCF"), Ross Correctional Institution ("RCI"), and the Ohio Department of Rehabilitation and Correction ("ODRC"). After an initial screening of his complaint, the Court permitted Plaintiff to proceed on claims involving legal mail, institutional grievances, and a missing package—and ordered him to amend his complaint accordingly. (Doc. 31). He did so, and his Second Combined Complaint (Doc. 33) is the operative pleading in this matter.

Now, Defendants bring a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), saying that Plaintiff has failed to state claims upon which relief may be granted. (Doc.

39).  Plaintiff has responded in opposition to that Motion (Doc. 41), and Defendants have replied (Doc. 42), making the Motion ripe for consideration.

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true.  *Twombly*, 550 U.S. at 556–57.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations).  In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Further, although *pro se* complaints are construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Said differently, "[t]he requirement for liberal construction . . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim."  *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012) (dismissing *pro se*

2

plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). The complaint must still "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III. DISCUSSION

Plaintiff brings three claims. First, he alleges that Defendants Annette Chambers-Smith and Gary Haywood interfered with legal mail from his attorney and a United States District Court. (Doc. 33 at 2–4). Second, he alleges that Defendants Linnea Mahlman and J. Oppy obstructed him from using the prison grievance system. (*Id.* at 4–5). Third, he alleges that Defendants Will Harmon, Benjamin Murphy, Tamara Driesbach, and Todd Diehl deprived him of a personal package of books he had delivered to RCI. (*Id.* at 5–7). Defendants say all three claims fail to state a claim upon which relief may be granted. (Doc. 39). Unsurprisingly, Plaintiff says he has carried his pleading burden regarding each claim. (Doc. 41). The Undersigned address each claim in turn.

    A. *Legal Mail Claim*

Plaintiff says that, at SOCF, mail from his attorney in another matter, as well as mail from a United States District Court, was withheld, opened, and copied outside of his presence. (Doc. 33 at 2–4). This was purportedly done in furtherance of an ODRC legal mail procedure, set forth in Section 5120-9-17 of the Ohio Administrative Code, which requires that "all incoming legal mail must be marked with a valid control number provided by ODRC." (Doc. 39 at 6). Absent such control number, "legal mail . . . received by an institution . . . shall be treated as regular, non-legal mail." (*Id.*). Plaintiff says the policy interferes with his First Amendment rights, and brings his claim against Defendant Chambers-Smith, the director of ODRC, for promulgating the policy,

3

as well as Defendant Haywood, the mailroom supervisor at SOCF.  (Doc. 33 at 2–4).  Defendants argue that the claim must be dismissed because the policy is constitutionally permissible and Plaintiff's factual contentions supporting the claim are insufficient.

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives."  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992))).  When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts."  *Id.* at 874 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)).  Relevant here, "mail from a court or correspondence to or from the prisoner's attorney is considered legal mail that cannot be opened outside the presence of the prisoner."  *Price v. Stephenson*, No. 18-1702, 2019 WL 2603540, at *2 (6th Cir. Apr. 26, 2019) (citing *Sallier*, 343 F.3d at 876–77).

First, Defendants' argument that the policy itself is constitutionally valid is premature at the motion-to-dismiss stage.  The policy is relatively new, and while true that one court has found that the "policy satisfies constitutional requirements[,]" *Whitman v. Gray*, No. 5:19-cv-1818, 2022 WL 621553, at *2 (N.D. Ohio, Mar. 3, 2022), that proposition is far from well-settled in this context, *see Brown v. Chambers-Smith*, No. 2:22-cv-2469, 2023 WL 1967514, at *2 (S.D. Ohio Feb. 13, 2023) (finding that *Whitman* was not dispositive of prisoner's legal mail claim at motion-to-dismiss stage), *report and recommendation adopted*, No. 2:22-cv-2469, 2023 WL 2534816

4

(S.D. Ohio Mar. 16, 2023).  Given this uncertainty, the Undersigned finds that the better course here is to allow this claim to be developed and resolved on its merits.

Second, Defendants say that Plaintiff has not sufficiently alleged interference with his mail, nor that these two Defendants were personally involved in the alleged constitutional violation.  The Undersigned disagrees.  Plaintiff alleges two incidents occurred in October 2021: (1) his attorney in another matter, Thomas P. Kurt, sent him a piece of mail clearly marked legal mail, but it was withheld and ultimately returned to Mr. Kurt without Plaintiff being allowed to view it, because it lacked a control number; and (2) a United States District Court sent Plaintiff a piece of mail, but it was opened outside of Plaintiff's presence, copied, "mutilated," and sent to Plaintiff by regular mail.  (Doc. 33 at 2; Doc. 1-1 at 6–7).  Defendants say that Mr. Kurt, in his declaration (Doc. 33 at 11–12) accompanying Plaintiff's Second Combined Complaint only mentions a later incident— in March 2022, when he had begun using the control number system and correspondence bearing a control number was misplaced by SOCF.  (Doc. 39 at 6–7).  But the fact that Mr. Kurt identified a later incident involving the mail does not mean the earlier incident could not also have plausibly occurred.

Further, Plaintiff has sufficiently alleged the personal involvement of the two Defendants. Plaintiff says that Defendant Chambers-Smith approved and implemented the mail policy, allowing for its enforcement at SOCF and across other ODRC institutions.  (Doc. 33 at 3).  While Defendants argue that this connection to the constitutional harm is too tenuous, it is actually quite direct.  But for Defendant Chambers-Smith requiring a control number for mail to be processed as legal mail, the mail sent to Plaintiff—from an attorney and a federal court—would not have been withheld from Plaintiff, nor opened outside his presence and copied.  Similarly, Plaintiff says that Defendant Haywood personally "handled the coordination and delivery of inmate mail at all

5

relevant times[.]" (Doc. 41 at 6). And Plaintiff complained directly to Defendant Haywood about the handling of his mail on at least one occasion. (Doc. 1-1 at 8). Plaintiff has sufficiently alleged personal actions from Defendant Haywood, such that the Undersigned is persuaded he is pursuing his claim against Haywood for more than just his supervision of mailroom employees, which—as Defendants rightly suggest—would be an impermissible basis for liability under §1983. (Doc. 39 at 8) (citing *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

While Plaintiff's factual allegations may not have yet developed to a point to survive a more stringent standard, such as summary judgment, at this early stage of the litigation—and giving Plaintiff the deference owed to a *pro se* complainant—the legal mail claim should proceed. Accordingly, the Undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED** regarding the legal mail claim.

  B. *Institutional Grievance Claim*

Plaintiff also alleges that he has been unable to successfully submit grievance requests regarding these legal mail concerns. (Doc. 33 at 4). When he first sought to submit a grievance, he was informed by Defendant Oppy that inmates in his unit were not permitted to use the electronic "J-Pay Kiosks," and that he should instead request a paper notification of grievance form. (*Id.*). Plaintiff then contacted Defendant Mahlman, who directed him to contact Defendant Haywood about his grievance and ignored—or else claimed to have never received—Plaintiff's subsequent request for a notification of grievance form. (*Id.* at 4–5). Plaintiff says Defendants Mahlman and Oppy have acted deliberately to deprive him of administrative redress and to prevent his opportunity to litigate his claims because he is unable to exhaust administrative remedies. (*Id.* at 5).

6

"[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Not allowing Plaintiff to access the J-Pay kiosk because of his inmate classification alone, then, does not rise to a constitutional violation. But he alleges that Defendants have gone further here, not allowing him an alternative means of using the grievance procedure. This is distinct from the "modified access" by which Plaintiff still has some means of submitting a grievance—and which the Sixth Circuit Court of Appeals has consistently held is constitutionally permissible. *See, e.g., Walker*, 128 F. App'x at 445 ("The lack of a constitutional right to unfettered access to a grievance procedure means that [plaintiff] is not entitled to relief on his claim that the modified access procedure arbitrarily denied him access to the prison's grievance procedures."); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("[P]lacement on modified access did not prohibit [plaintiff] from utilizing the grievance process."). In other words, Plaintiff complains not because he has been placed on modified access to the grievance procedure, but because he has no access to the grievance procedure. Defendants do not meaningfully address this distinction in their Motion. (*See* Doc. 39 at 9–10). Plaintiff may have a colorable claim that his First Amendment right to petition for redress has been violated in this instance.

To the extent Plaintiff extends this allegation to include the harm of denying him access to the courts, however, the Undersigned finds the claim unavailing. While Plaintiff says that the lack of grievance procedure means he cannot exhaust remedies before bringing federal litigation, the law requires only that he exhausts administrative remedies that are "available." 42 U.S.C. § 1997e(a). As the Sixth Circuit put it:

> to the extent that [plaintiff] alleges that he was improperly prevented from pursuing a grievance, his right of access to the courts was not compromised by his inability to file an institutional grievance. The exhaustion requirement mandates exhaustion only of *available* administrative remedies. If a prisoner is improperly denied access

7

> to the grievance process, the process is rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

*Alexander*, 2017 WL 7050641, at *3 (emphasis in original) (citations omitted).

Regarding this claim, the Undersigned **RECOMMENDS** that Defendants' Motion be **GRANTED in part and DENIED in part**, and Plaintiff be allowed to proceed on his claim about access to the grievance procedure—but not that portion of the claim that involves access to the courts.

C. Missing Package Claim

Finally, Plaintiff says he ordered a package of books to RCI which he did not receive. (Doc. 33 at 5–7). This had happened to Plaintiff once before. When an earlier order of books from the same publisher went missing and Plaintiff grieved, RCI reimbursed him. (Doc. 7-3 at 5). He then placed another order, and when that order was again delayed, he purportedly confirmed with the publisher that it had been delivered to RCI. (Doc. 33 at 6). Plaintiff then contacted the mailroom through the J-Pay Kiosk, at which point Defendant Murphy informed him that the order "did not exist." (*Id.* at 6–7). Plaintiff again initiated the grievance procedure. (Doc. 33 at 7). During the grievance review, Defendant Driesbach asked for the order invoice and tracking number, and informed Plaintiff that the package had been delivered to a different P.O. box. *Id*. The grievance was ultimately referred to Defendant Diehl, whom Plaintiff says refused to address the lost package. *Id*.

Plaintiff's claim is best understood as a deprivation of property due process claim. A missing package alone is insufficient for a constitutional claim. *See Honzu v. Warden, Ross Corr. Inst.*, No. 2:22-CV-292, 2022 WL 3018095, at *12 (S.D. Ohio July 29, 2022), *report and recommendation adopted*, No. 2:22-CV-292, 2022 WL 17974392 (S.D. Ohio Dec. 28, 2022); *see also Darling v. Lake Cty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio

8

May 25, 2012) (*citing River City Capital, L.P. v. Bd. of Cty. Comm'rs, Clermont Cty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007)) (a plaintiff "does not state a due process claim merely by alleging the deprivation of property"). Instead, a plaintiff must illustrate that the available state procedures were insufficient. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).

Here, Plaintiff has not plausibly alleged that the available state procedures for remedying the deprivation of property were insufficient. Notably, the first time his books went missing, he was able to use the grievance procedure to secure full reimbursement for the order. (Doc. 26 at 4–5). And, regarding the second order of books, the grievance was again investigated, but it could not be substantiated by a record of any employee at RCI signing for the package at the warehouse. (*Id.* at 6). Instead, it appeared from the tracking number that the books had been sent to a P.O. box at the Chillicothe post office not owned by RCI. (*Id.*). So, while Plaintiff did not have a favorable outcome from his second use of the state procedure, he has not plausibly alleged that the procedure itself is insufficient.

Still more, there is an insufficient connection between the Defendants' personal actions and the claim. Plaintiff names Defendant Harmon in connection with the claim because the first package of books was noted to have been received at the RCI warehouse by Defendant Harmon. (Doc. 33 at 6). But because the costs of that first missing order of books was reimbursed, this does not connect Defendant Harmon to any harm. The other named Defendants, Diehl, Driesbach, and Murphy, all participated in some aspect of the investigation of Plaintiff's grievances. (*Id.* at 7; Doc. 26 at 6, 11). But the fact that they investigated, and in the second instance, denied Plaintiff's grievance does not connect them to the underlying alleged harm—the taking of Plaintiff's books.

9

For all these reasons, Plaintiff fails to state a plausible claim regarding the missing package. Accordingly, the Undersigned **RECOMMENDS** that, in this respect, Defendants' Motion to Dismiss be **GRANTED** and the missing package claim be **DISMISSED**.

D. *Qualified Immunity*

Defendants also briefly raise the defense of qualified immunity. (Doc. 39 at 12–14).

The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

Courts use a two-prong test to resolve claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, a Court must determine if "the facts alleged make out a violation of a constitutional right." *Id.* Second, a Court must determine whether "the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct" constituted a constitutional violation. *Id.*

Defendants' arguments address only this first prong, arguing that Plaintiff has altogether failed to allege facts which make out a violation of a constitutional right. (Doc. 39 at 12–14). For the reasons described above, the Undersigned finds that, regarding the legal mail and institutional grievance claims, this is not the case. At least at this early stage of litigation, and with limited

10

development of the qualified immunity arguments by Defendants, the Undersigned does not find that Defendants' Motion should be granted on qualified immunity grounds.

## IV.     SERVICE

Previously, the Court ordered service by the United States Marshal on all Defendants in this action. (Docs. 8, 34). Service appeared to be successful on all Defendants except Defendant Mahlman. (*See* Doc. 46). Because Plaintiff had already taken reasonable steps to identify Defendant Mahlman, the Court ordered counsel for the State of Ohio to submit under seal her last known addresses. (*Id.*). Counsel has done so (Doc. 47), and service may now be completed. Accordingly, it is **ORDERED** that the United States Marshal serve a copy of the Second Combined Complaint (Doc. 33), summons, the Order granting Plaintiff leave to proceed in forma pauperis (Doc. 8), and this Report and Recommendation and Order upon Defendant Mahlman, using her updated address **available at Doc. 47. All costs of service shall be advanced by the United States.** The Clerk of Court is **DIRECTED** to file the summons under seal.

## V.     CONCLUSION

Based on the foregoing, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 39) be **GRANTED in part and DENIED in part**. In particular, the Undersigned recommends that Plaintiff should be allowed to proceed on his legal mail claim and his institutional grievance claim (excepting the portion of that claim alleging denial of access to courts). But, Plaintiff's missing package claim should be dismissed. Additionally, the Court **ORDERS** service on Defendant Mahlman by the United States Marshal.

Finally, the Court notes that Plaintiff has a pending Motion for Appointment of Counsel (Doc. 40). The Court will hold that Motion in abeyance until the District Judge has ruled upon

this Report and Recommendation and determined which claims should proceed to be tried on their merits.

### **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: June 15, 2023                                        s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE